## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **RUTH BOGGS** | : | |
| | : | |
| v. | : | **CIVIL NO. L-02-1119** |
| | : | |
| **MERCK & CO., INC.** | : | |

### MEMORANDUM

Plaintiff Ruth Boggs filed suit against Defendant Merck & Co., Inc. ("Merck") for breach of contract and declaratory judgment. Ms. Boggs claims that Merck breached her benefits contract when it withdrew her long-term disability benefits. Now before the Court are cross-motions for summary judgment. As the motions have been fully briefed, the Court will dispense with a hearing. See Local Rule 105.6 (D. Md. 2001). For the reasons stated below, the Court will, by separate Order, (i) GRANT Defendant's Motion for Summary Judgment, (ii) DENY Plaintiff's Motion for Summary Judgment and (iii) DIRECT the Clerk to CLOSE the Case.

### I.    Factual Background

On April 6, 1987, Ms. Boggs began working for Merck as a sales representative. In 1993, Ms. Boggs was diagnosed as having a Type Two bipolar disorder with a secondary diagnosis of panic disorder. (Def.'s Ex. 1 at 208.) Ms. Boggs, however, continued to work as a sales representative without any apparent problems. On January 1, 1998, she was promoted to Senior Specialty Representative. In September 1998, Ms. Boggs went on medical leave due to her psychiatric illness.

Merck offered its employees long-term disability ("LTD") coverage through a self-funded employee benefit plan (the "Merck Plan"). The Merck LTD Plan initially defines total disability as

being unable to perform all material aspects of one's own occupation.  (Def.'s Ex. 1 at 262.)  Total disability is defined in this manner during the first 24 consecutive months that benefits are paid under the Plan.  (Id.)  After 24 months, in order to continue receiving disability benefits, the employee must establish that she is unable to engage in any gainful employment for which she is or may become reasonably qualified by education, training or experience.  (Id.)  Gainful employment is defined as "compensation (whether wages, commissions, earnings, profits or otherwise) for services that would replace at least 60% of one's base salary prior to one's disability in a job that is reasonably available within up to 75 miles."  (Id.)

Metropolitan Life Insurance Company ("Met Life") was the claims administrator under the Merck Plan.  In Spring 1999, Merck notified Met Life of Ms. Boggs's disability claim.  Met Life approved Ms. Boggs's claim and found her to be "totally disabled."  She, therefore, began to receive disability benefits.  Under the terms of the Merck Plan, Ms. Boggs was qualified to receive benefits for 24 months before being reevaluated.  In Ms. Boggs's case, the 24-month period lapsed on March 1, 2001.

In order to continue receiving benefits after March 1, 2001, Ms. Boggs was required to prove that she was unable to engage in any gainful employment.  In assessing her application for continued benefits, Met Life reviewed (i) the information and records provided by Ms. Boggs and her treating physician, Dr. Jayaram, and (ii) an independent evaluation by Dr. Bettina B. Kilburn.  Met Life concluded that Ms. Boggs was no longer totally disabled as defined by the Merck Plan.  Accordingly, Ms. Boggs's LTD benefits ceased on March 2, 2001.

Ms. Boggs appealed Met Life's decision.  Met Life conducted a review of the ruling, as well as

a Transferable Skills and Labor Market Analysis ("TS & LM"). (Id. at 45-46.) The analysis

determined that Ms. Boggs could perform her own job as a sales representative in the pharmaceutical

industry, as well as positions as a sales representative in other industries. The TS & LM analysis

concluded that these positions were available in her geographical area, and that she could earn at least

60% of her salary in those positions. (Id. at 45-46.) On September 24, 2001, Plaintiff was advised

that the initial decision to withdraw benefits was appropriate and would remain in effect. (Id. at 41-43.)

In response, Ms. Boggs filed the instant suit.

## II.    Summary Judgment Standard

The Court may grant summary judgment when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-

Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an

affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial).

Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts,

and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving

party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

## III.    Analysis

The issue before the Court involves the provisions of an employee welfare benefit plan.   The

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* governs the Court's

analysis.  All parties agree that the Merck Plan confers discretion upon Met Life to construe and

3

interpret provisions of the plan, make factual determinations, and decide all questions of eligibility for benefits. Moreover, all parties agree that Met Life's actions should be reviewed pursuant to an abuse of discretion standard of review. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989). Under this standard, an administrator's decision will not be disturbed if it is reasonable. Reasonable has been defined as "the result of a deliberate principled reasoning process and ... supported by substantial evidence." Id. at 115; Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir. 1995).

In its motion for summary judgment, Merck argues that Met Life completed a thorough and reasoned evaluation of Ms. Boggs's records. Ms. Boggs responds that (i) the decision to terminate her benefits was neither reasoned nor supported by substantial evidence, (ii) that before doing any research or analysis, Met Life had already decided to end her benefits, and (iii) Met Life's findings cannot be reasoned because Met Life's determination was at odds with the diagnosis of her physician, Dr. Jayaram. The Court will address each of Ms. Boggs's arguments in turn.

To begin with, Met Life hired Dr. Kilburn to conduct an independent medical review of Ms. Boggs's situation. Dr. Kilburn determined that Ms. Boggs was no longer totally disabled. (Def.'s Ex. 1 at 75.) In reaching this conclusion, Dr. Kilburn reviewed nine separate categories of documents. (See id. at 75-76.) For example, Dr. Kilburn relied on Dr. Jayaram's patient notes, which described Ms. Boggs as sleeping well, alert, neat, oriented, with brighter affect, no mood instability, and some feelings of inadequacy. (Id. at 74.) Dr. Kilburn also noted that Ms. Boggs was able to read extensively, perform computer work, care for her child, engage in activities of daily living, and interact with the public. (Id. at 75.) In short, Dr. Kilburn's review of the file was thorough, and her conclusion was well-supported.

4

Ms. Boggs also argues that Met Life had made its decision to terminate her benefits prior to doing any investigation. In support, Ms. Boggs relies on a one-line email dated January 17, 2001, which states, "we will most likely be withdrawing ee's claim at transition." (Id. at 102.) This email, however, closely followed a report filed by Dr. Jayaram concluding that Ms. Boggs was capable of performing jobs other than pharmaceutical sales representative positions. (Id. at 93.) Following Dr. Jayaram's letter, it was reasonable for Met Life to anticipate that Ms. Boggs would no longer qualify as totally disabled under the Merck Plan.[1] The January 17, 2001, email, therefore, was written after Met Life had already begun its investigation, and it is not evidence that Met Life's decision to terminate Plaintiff's disability benefits was made before any evidence was available to support it.

Finally, Ms. Boggs contends that the TS & LM was not accurate because Dr. Jayaram had concluded that, although Ms. Boggs was capable of performing other jobs, she could not perform the job of a pharmaceutical sales representative. (See Id. at 93, 132.) The Court does not find this argument convincing.

First, Dr. Jayaram largely agrees with Dr. Kilburn's findings. (Id. at 67.) To the extent Dr. Jayaram's opinions differ from Dr. Kilburn's, Met Life is not required to accept the views of Dr. Jayaram simply because she was Ms. Boggs's treating physician. See Elliott v. Sara Lee Corp., 190

---

[1]Met Life did not have to determine that Ms. Boggs could perform her own position as a sales representative, but rather any position that would meet the requirements of the plan. The fact, therefore, that Dr. Jayaram's January 17th letter stated that Dr. Jayaram did not believe Ms. Boggs could perform the duties of a pharmaceutical sales representative is of no consequence. Simply because, at a later date, Met Life determined that Ms. Boggs could in fact perform the position of sales representative, does not alter the fact that in March 2001, Met Life only needed to determine if Ms. Boggs could perform any other jobs as defined by the plan.

F.3d 601, 607-8 (4th Cir. 1999) (finding no abuse of discretion in denial of benefits where beneficiary's primary medical provider's finding of disability conflicted with reports of an independent medical panel).  Moreover, Dr. Jayaram admitted that she did not feel "qualified to state which jobs [Ms. Boggs] will be able to perform without stress and anxiety."  (Id.)  Finally, Ms. Boggs performed the position of sales representative for five years without incident.  It was only after she was promoted to Senior Specialty Representative that her illness intensified.  It is reasonable to conclude that Ms. Boggs can successfully perform again in a less stressful position.

Accordingly, the Court concludes that Met Life's decision to terminate Ms. Boggs's disability benefits is supported by substantial evidence and the decision is the result of a deliberate and reasoned process.

**IV.    Conclusion**

For the reasons stated above, the Court will, by separate Order, GRANT Defendant's Motion for Summary Judgment, DENY Plaintiff's Motion for Summary Judgment, and DIRECT the CLERK to CLOSE the CASE.

Dated this   26th   day of March, 2003.

_____/s/_____
Benson Everett Legg
Chief Judge